UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARYL T. TIBBS,

       Petitioner,                                              Case No. 19-CV-12939
                                                              Hon. Thomas L. Ludington

v.

CONNIE HORTON, WARDEN,

       Respondent.

_____/

**OPINION AND ORDER DISMISSING PETITION FOR HABEAS CORPUS (ECF NO. 1), DENYING MOTIONS FOR PRODUCTION OF DOCUMENTS (ECF NO. 9) AND APPOINTMENT OF COUNSEL (ECF NO. 10), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Daryl T. Tibbs, currently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on October 8, 2020. ECF No. 1. He challenges his jury trial convictions in the Genesee County Circuit Court of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b); armed robbery, Mich. Comp. Laws § 750.529; and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. Petitioner's sole grounds for habeas relief are that the trial court erred in denying his motion for a mistrial when the jury failed to reach a unanimous verdict after several days of deliberation and that the supplemental instruction the court gave instead was coercive. For the reasons that follow, the petition for writ of habeas corpus will be dismissed.

I.

Petitioner's convictions arose from a September 18, 2015 shooting and robbery at the home of Travis Galloway, where Galloway was killed after being shot eight times. *People v. Tibbs*, No.

338867, 2018 WL 6709331, at *1 (Mich. Ct. App. Dec. 20, 2018), *appeal denied*, 927 N.W.2d 249 (Mich. 2019). Petitioner "had been temporarily staying at Galloway's house because he was homeless." *Id*. The morning after a party, witnesses heard gunshots shortly after Galloway's mother overheard "a brief contentious exchange between [Petitioner] and Galloway." *Id*. Petitioner emerged from the home with a "superficial" wound on his leg, stating that he had been shot by an intruder. *Id*. Police took Petitioner to the hospital for treatment. There, they found Petitioner in possession of Galloway's wallet, identified by DNA and description and containing $1,250. *Id*.

Petitioner was convicted after a jury trial. The jury started deliberating on a Friday afternoon, the sixth day of trial. ECF No. 8-15 at PageID.1299 (trial transcript April 21, 2017). At approximately 2:00 P.M. the following Monday, the jury indicated to the trial court it was having difficulty reaching a verdict. ECF No. 8-16 at PageID.1303 (trial transcript April 24, 2017). The trial court gave the standard Michigan deadlocked jury instruction, which Petitioner did not challenge on appeal. *See Tibbs*, 2018 WL 6709331 at *1 (describing the instruction as "in accordance with the ABA standard deadlocked jury instruction"); ECF No. 8-22 at PageID.1381 (Petitioner's appeal brief).

On Tuesday afternoon, the trial court received communications from the jury as well as an individual juror. *Tibbs*, 2018 WL 6709331 at *1. Unfortunately, the court's instructions to the jury in response were not recorded. *Id*. at *1–2. Accordingly, the court put the following summary into the record:

> What I said was about a half an hour ago a juror wrote, "I'm tired of being treated like an outsider just because I do not agree with the other, and being called out of my name." And then 10 or 15 minutes after that we received a note from the jury saying, "If one person refuses to come to a decision on anything and will not elaborate why, how do we proceed?" So the Court called the jury out here and I said to them that it was apparent there was a personality conflict going on. That the jury should make their decision based upon the facts and the elements and not on personal disagreements. I said it's natural that people can disagree, but—and there's

> a natural inclination to take it personally, but the Court wanted them to avoid the personal nature of any disagreement and focus on the facts and be more objective.
>
> And then the Court suggested to them that—reminded them that the instructions say that they can make a verdict on one charge or all charges. And if they had the unanimous agreement on any one charge they're free to come back out and announce that and then continue deliberating on the rest of them. And I told them to use the facts and go back and discuss it some more. Now before I did all that [defense counsel] Mr. Beauvais objected . . . .

*Tibbs*, 2018 WL 6709331 at *2 [sic throughout].

The court permitted defense counsel to re-raise his objection. *See* ECF No. 8-17 at PageID.1310 (trial transcript April 25, 2017). Counsel argued that the holdout juror would be "browbeaten into agreeing with the majority" and would "set[] aside their own personal opinion as to" Petitioner's guilt or innocence. *Id*. Counsel asked the court to declare a mistrial, but the trial continued. *Id*. at PageID.1311.

The jury continued deliberations through late Wednesday afternoon. It then sent two questions to the court, asking for the "definition of cold blooded murder" (which the court dismissed as a "TV land" concept) and seeking a distinction between first- and second-degree murder "in layman terms." ECF No. 8-18 at PageID.1317 (trial transcript April 26, 2017). The court distributed and reviewed with the jury a chart explaining the differences between the charges. *Id*. at 1317–18.

Finally, shortly after noon on Thursday, the jury arrived at a verdict. It found Petitioner guilty of first-degree felony murder, armed robbery, and the use of a firearm while committing a felony. ECF No. 8-19 at PageID.1323 (trial transcript April 27, 2017). The jurors collectively and individually confirmed the unanimous verdict. *Id*. at PageID.1324–25.

On direct appeal, Petitioner's only issues were the denial of his motion for a mistrial and the court's supplemental instructions. *Tibbs*, 2018 WL 6709331 at *2. The Michigan Court of

Appeals affirmed his conviction. *Id*. at *3. In a standard form order, the Michigan Supreme Court denied leave to appeal. *Tibbs*, 927 N.W.2d 249. This timely petition for a writ of habeas corpus followed. Petitioner raises the same issues: the trial court's refusal to call a mistrial and the coercive supplemental instructions.

## II.

Title 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

18 U.S.C. § 2254(d). A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411.

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102. Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)). A habeas petitioner may rebut this presumption of correctness only with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Moreover, for claims that were adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**III**.

Petitioner's grounds for habeas relief are that the trial court's instructions to the jury after the second deadlock were coercive and that the court erred when it denied his motion for a mistrial. The Michigan Court of Appeals found that the supplemental instructions given were not coercive

because they were "responsive to the situation presented," and did not contain "any pressure, threats, embarrassing assertions, or other wording that would constitute coercion." *Tibbs*, 2018 WL 6709331 at *3. From "the jury's subsequent question about the elements of first-degree murder and second-degree murder," the appellate court concluded that the jury did appear to "engage in deliberations, focusing on the elements and the facts, as instructed." *Id*. Finally, it held that the trial court had not abused its discretion in denying Petitioner's motion for a mistrial. *Id*. The state court's findings were not unreasonable.

First, when a jury is deadlocked, a trial court may give a supplemental charge urging the jury to continue its deliberations in order to arrive at a verdict. *See Allen v. United States*, 164 U.S. 492 (1896). So-called *Allen* charges help "avoid[] the social costs of a retrial, including the time, expense, and potential loss of evidence that a new trial would entail." *Hardaway v. Robinson*, 655 F.3d 445, 448 (6th Cir. 2011) (citing *Lowenfield v. Phelps*, 484 U.S. 231, 237–38 (1988)). Petitioner does not challenge the trial court's use of Michigan's version of an *Allen* charge when the jury first deadlocked.

He does challenge the court's supplemental instructions after the jury's second set of communications. The constitutionality of those supplemental instructions hinges on whether they were coercive. *Lowenfield*, 484 U.S. at 241. The trial court summarized the challenged instructions as follows:

> I said to [the jury] that it was apparent there was a personality conflict going on. That the jury should make their decision based upon the facts and the elements and not on personal disagreements. I said it's natural that people can disagree, but—and there's a natural inclination to take it personally, but the Court wanted them to avoid the personal nature of any disagreement and focus on the facts and be more objective.

*Tibbs*, 2018 WL 6709331, at *2; *see also* ECF No. 8-17 at PageID.1309. Petitioner argues that the court's instruction to focus on the facts could have caused a juror to bend her will to the majority.

ECF No. 1 at PageID.18. He contends that the court's use of the term "personality conflict" could have the same effect. *Id.* at PageID.17. Petitioner also criticized the trial court's omission of the "honest conviction" portion of the model *Allen* charge. *Id.* at PageID.17–18.

Suggesting the jury "focus on the facts and be more objective" is the kind of "general instruction" the Sixth Circuit upheld in *Bedford v. Collins*, 567 F.3d 225 (6th Cir. 2009), because it did "not imply that only those in the minority should rethink their position." *Id.* at 238 (citing *Williams v. Parke*, 741 F.2d 847, 850–51 (6th Cir. 1984)). The *Bedford* court also found the omission of the instruction "not to surrender honest convictions" was not fatal, because, as here, the jury received that instruction the day before it received the challenged instructions. *Bedford*, 567 F.3d at 238; ECF No. 8-16 at PageID.1304-05 ("None of you should ever give up your honest belief about the weight and the effect of the evidence . . . .").

The "honest convictions" instruction is most necessary when the remainder of an instruction is potentially coercive. *Bedford*, 567 F.3d at 238. But the trial court's instructions here contained none of the hallmarks of coercion, such as informing the jury it must reach a verdict, *Lowenfield*, 484 U.S. at 239, "pressur[ing] a decision in a particular direction," *United States v. Lash*, 937 F.2d 1077, 1086 (6th Cir. 1991), or requiring the jury "deliberate for an unreasonable length of time or for unreasonable intervals." *Tibbs*, 2018 WL 6709331 at \*2 (citing *People v. Hardin*, 365 N.W.2d 101, 110 (Mich. 1984)).

Further, the jury's continued deliberation for another day and a half after receiving the supplemental instruction also demonstrates the absence of coercion. *Lowenfield*, 484 U.S. at 240 ("[Returning a verdict] soon after receiving the supplemental instruction . . . suggests the possibility of coercion."); *Mason v. Mitchell*, 320 F.3d 604, 642 (6th Cir. 2003) (finding that more than three hours deliberation after instructions indicates lack of coercion); *Camel v. Sowders*, 947

F.2d 944 (6th Cir. 1991) ("[C]ourts pay close attention [to] the length of time that elapses between the *Allen* charge and the verdict.").

Finally, "whether to grant a mistrial is reserved to the 'broad discretion' of the trial judge, a point that 'has been consistently reiterated in decisions of [the Supreme] Court.'" *Renico v. Lett*, 559 U.S. 766, 774 (2010) (citing *Illinois v. Somerville*, 410 U.S. 458, 462 (1973)). The case for deference to the trial court is "'especially compelling' in cases involving a potentially deadlocked jury" because that court "'is in the best position . . . [to determine] whether the jury will be able to reach a just verdict if it continues to deliberate.'" *Id*. (quoting *Arizona v. Washington*, 434 U.S. 497, 509, 510 n. 28 (1978)).

As described by the court in its summary on the record, the communications from the jury on the third day of deliberations did not indicate that it was deadlocked. The complaint by the individual juror and the jury's related question reflected conflict within the panel. However, because the jury expressly requested guidance on how to proceed, *Tibbs*, 2018 WL 6709331 at *2, it was reasonable for the trial court to conclude the jury was not at an impasse and that supplemental instructions would be appropriate to deal with the conflict. As *Renico* recognized, the trial court was best situated to make that determination. *Renico*, 559 U.S. at 774.

Accordingly, the state appellate court's deference to the trial court and its determination that the trial court did not err in declining to call a mistrial was reasonable, as was its finding that the supplemental instructions were not coercive. Petitioner is not entitled to habeas relief.

**IV.**

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§ 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks and citation omitted).

In this case, reasonable jurists could not debate the Court's conclusion that Petitioner is not entitled to habeas relief. Therefore, the Court denies a certificate of appealability. The Court will also deny Petitioner permission to proceed on appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, it is **ORDERED** that the Petition for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Petitioner's motions for production of documents, ECF No. 9, and appointment of counsel, ECF No. 10, are **DENIED AS MOOT**.

It is further **ORDERED** that a certificate of appealability and permission to appeal *in forma pauperis* are **DENIED**.

Dated: December 2, 2020
s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Daryl T. Tibbs** #366926, CHIPPEWA CORRECTIONAL FACILITY, 4269 W. M-80, KINCHELOE, MI 49784 by first class U.S. mail on December 2, 2020.

s/Kelly Winslow
KELLY WINSLOW, Case Manager